**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TIMOTHY KELLEY and EMILY KELLEY,**                    **PLAINTIFFS**
**as Parents and Next Friend of H.K.**

**v.**                              **Case No. 4:23-cv-00782-LPR**

**VILONIA SCHOOL DISTRICT, et al.**                    **DEFENDANTS**

**ORDER**

This Order imposes significant sanctions on Ms. Bridgette Work.  Ms. Work was Plaintiffs' counsel for much of the instant case—until Plaintiffs fired her.[1]  The matter is now closed, but the Court retained jurisdiction to address Ms. Work's misconduct during the pendency of this litigation.[2]  In a nutshell, Ms. Work intentionally lied to the Court and willfully ignored a Court Order.  Because of the gravity of this misconduct and its potential consequences, the Court will provide a fair bit of background before rendering findings of fact and conclusions of law.

**BACKGROUND**

**I.      Ms. Work's First Misstep**

This all started with Ms. Work blowing the deadline for submission of Plaintiffs' responsive summary judgment papers.[3]  The District Defendants moved to strike the untimely papers.[4]  The Court issued an Order holding the District Defendants' Motion in abeyance.[5]  That Order provides

---

[1] *See* Timothy Kelley Decl. (Doc. 85) ¶ 28; Emily Kelley Decl. (Doc. 86) ¶ 29.

[2] *See* Apr. 30, 2025 Order (Doc. 96).

[3] *See* Feb. 7, 2025 Order (Doc. 79) at 2–3.

[4] Mot. to Strike (Doc. 64).  The District Defendants are the Vilonia School District and the School District officials.

[5] Feb. 7, 2025 Order (Doc. 79).

important background for today's ruling. The Court therefore excerpts the relevant portions of the

Order below.[6]

> The biggest issue presented in the Motion to Strike concerns the timing of Plaintiffs' Response to the District Defendants' Motion for Summary Judgment. Federal Rule of Civil Procedure 56—the federal rule governing summary judgment motions—does not set a timeline for a response to summary judgment motions. But this Court's Local Rules do. Local Rule 56.1(d) expressly requires responsive papers to be filed along the timeline set out in Local Rule 7.2(b). And Local Rule 7.2(b) makes clear that responsive papers for all motions (including motions for summary judgment) must be filed within 14 days of the date on which the underlying motion is filed. Moreover, this 14-day timeline is not hidden from litigants or hard to discover. Indeed, quite the opposite is true. In this case—as in every (or nearly every) civil case—the Court expressly set out this 14-day timeline in its Final Scheduling Order.[*]
>
> On August 9, 2024, one of the law enforcement officers (Police Chief Brad McNew) filed his Motion for Summary Judgment.[*] Fourteen days from August 9, 2024, was August 23, 2024. And it is therefore no surprise that Plaintiffs filed their Response to the Motion on August 23, 2024.[*] But things did not go as swimmingly with respect to the Motion for Summary Judgment pursued by the District Defendants. They moved for summary judgment on August 12, 2024.[*] Given the 14-day response deadline, Plaintiffs' responsive papers were due on August 26, 2024. But August 26 came and went without any Response or a request to extend the deadline. On August 27, 2024, Defendants filed a document that, among other things, noted the August 26 deadline.[*] Still, no Response or extension request was filed. Plaintiffs did not file their responsive papers until September 4, 2024.[*] And, when they did file, they did not seek leave to file those papers out-of-time.

---

[6] The excerpt of the Court's Order includes footnotes. In that Order, the footnotes were numbered. But to avoid confusion here, the Court has replaced the footnote numbers with the * symbol. Throughout today's Order, the Court does similarly each time it excerpts passages from prior Orders.

[*] *See* Final Scheduling Order (Doc. 15) § 7. Civil litigants first get a preliminary copy of this document when the Court issues its Initial Scheduling Order. *See* Initial Scheduling Order (Doc. 9) at 2–5. At that point, the document is a mere default proposal to which litigants can make changes. Later, litigants receive this document when it is finalized and entered on the docket as a fully enforceable Final Scheduling Order. All this occurred in the instant case.

[*] McNew's Mot. for Summ. J. (Doc. 22).

[*] Resp. to McNew's Mot. for Summ. J. (Doc. 33). To be more specific about it, the docket reflects that (1) the Response was filed on August 23, 2024, and entered on August 24, 2024; and (2) the Brief and the Response to the Statement of Material Facts were filed and entered on August 24, 2024. The Court is assuming that either all of these documents were actually filed on August 23, 2024, or there were some technical problems that pushed the filing of the latter documents to the following day.

[*] District Defs.' Mot. for Summ. J. (Doc. 26).

[*] Joint Mot. for Extension of Time (Doc. 37) ¶ 2.

[*] Resp. to District Defs.' Mot. for Summ. J. (Doc. 43).

To summarize: (1) Plaintiffs blew their deadline to file papers responding to the District Defendants' Motion for Summary Judgment; (2) Plaintiffs did not ask to extend that deadline; and (3) when Plaintiffs did finally file their responsive papers (nine days late), they did not seek leave of the Court to make out-of-time filings. This is the major thrust of the District Defendants' Motion to Strike the untimely responsive papers.[*] So what do Plaintiffs have to say about all this?

First, Plaintiffs say that their responsive papers were filed on September 4, 2024, "sixteen (16) days after the District Defendants filed their Motion for Summary Judgment."[*] This statement is inaccurate. The relevant summary judgment motion was filed on August 12, 2024.[*] September 4 is 23 (not 16) days after August 12.[*]

Second, Plaintiffs say that Federal Rule of Civil Procedure 56 is "conspicuously silent on when a response to a motion for summary judgment is due, only providing that the response is within a 'reasonable' amount of time."[*] Plaintiffs add that "Plaintiffs' counsel ignorantly deferred only to the FRCP in making the filings and thus made no motion to seek extension of the deadline for response."[*] They also state that Plaintiffs' counsel "was not aware that there was a deadline missed."[*] These statements are—to be polite about it—suspect.

Contrary to Plaintiffs' primary assertion, Federal Rule of Civil Procedure 56 does not "provide that the response" to a summary judgment motion "is within a 'reasonable' amount of time."[*] Rule 56(f) references a reasonable amount of time to respond. But that section is labeled "Judgment Independent of the Motion."[*] That section speaks of *the Court* giving a party "notice and a reasonable time to respond" if the Court is going to "grant summary judgment for a nonmovant," "grant the motion on grounds not raised by a party," or "consider summary judgment on its own . . . ."[*] The section is about *sua sponte* Court action. It has

---

[*] *See* Br. in Supp. of Mot. to Strike (Doc. 65) at 1–6.

[*] Br. in Opp'n to Mot. to Strike (Doc. 67) at 1.

[*] District Defs.' Mot. for Summ. J. (Doc. 26).

[*] Plaintiffs make a related misstatement later in their Response to the Motion to Strike, asserting that the 14-day time requirement created a deadline of August 30, 2024, for Plaintiffs to file their papers responsive to the relevant summary judgment motion. *See* Br. in Opp'n to Mot. to Strike (Doc. 67) at 2. But the 14-day response deadline was actually August 26, 2024.

[*] Br. in Opp'n to Mot. to Strike (Doc. 67) at 2.

[*] *Id.*

[*] *Id.* at 3.

[*] *Id.* at 2.

[*] Rule 56(h) also mentions a "reasonable time to respond." But that section concerns affidavits and declarations submitted in bad faith. That section clearly has nothing to do with the deadline to respond to a motion for summary judgment.

[*] Fed. R. Civ. P. 56(f).

nothing at all to do with a party's response to another party's summary judgment motion. And, in any event, it instructs the Court to set a reasonable time period; it does not tell litigants that they can have any old "reasonable time" they want.

Plaintiffs' position on Rule 56 amounts to either an intentional misrepresentation or egregiously deficient legal work. The Court is honestly not sure which it is. Recall that Plaintiffs filed their Response to McNew's Motion for Summary Judgment exactly 14 days after that Motion was filed.[*] If Plaintiffs believed their Response was due "in a reasonable time," it is quite a coincidence that they happened to file on the day of the deadline. Recall further that, in addition to being set out in the Local Rule, the 14-day timeline was set out in the Final Scheduling Order.[*] And, finally, recall that, on August 27, 2024, Defendants noted in a Court filing that the relevant deadline was August 26, 2024.[*] For Plaintiffs' position to make any sense, the Court would have to believe that Plaintiffs' counsel missed, ignored, or forgot the deadline-related information in each of these different documents.

The Court does not need to resolve the misrepresentation-versus-substandard-lawyering dilemma at this time. That is because Plaintiffs did not file a motion for leave to file out-of-time. They didn't file such a motion at the time of filing the papers responsive to the District Defendants' Motion for Summary Judgment. And they have not filed such a motion since. Accordingly, whether the conduct of Plaintiffs' counsel constitutes excusable neglect is not properly before the Court. What is before the Court is what to do with a late filing when it is unaccompanied by a motion for leave to file out-of-time. There is an easy answer to that question: Strike it. So, unless Plaintiffs file a motion for leave to file an out-of-time response within one week from the date of this Order, the Court will strike Docs. 43–49 in their entirety.[*]

If Plaintiffs file a Motion for Leave to File an Out-of-Time Response, it must (1) comply with all applicable Local Rules; (2) include, in addition to the Motion and supporting Brief, a Declaration signed by Plaintiffs' counsel swearing to all relevant facts concerning the blown deadline; (3) explain in more detail—and in light of what the Court has said above—Plaintiffs' position on Rule 56 and whether Plaintiffs' counsel failed to read the Local Rule, the Final Scheduling Order, and Doc. 37; and (4) explain why this is not the "garden-variety attorney inattention"

---

[*] *See* McNew's Mot. for Summ. J. (Doc. 22); Resp. to McNew's Mot. for Summ. J. (Doc. 33).

[*] *See* Final Scheduling Order (Doc. 15) § 7.

[*] *See* Joint Mot. for Extension of Time (Doc. 37) ¶ 2.

[*] If the Court strikes those responsive papers in their entirety, the remainder of the District Defendants' Motion to Strike—which challenges certain documents attached as Exhibits to the responsive papers—will be moot. *See* Br. in Supp. of Mot. to Strike (Doc. 65) at 6–9. If the Court decides not to strike the responsive papers in their entirety, the Court will then have to address the remainder of the Motion to Strike.

or "inadvertence" that cases like *Lowry v. McDonnell Douglas Corp.* generally find to be inexcusable neglect.[*7]

## II.    Ms. Work Makes Things Much Worse

Three days after the Court entered the Order just discussed, Ms. Work filed a Motion for Leave to file plaintiffs' responsive summary judgment papers out-of-time.[8]  The Court denied that Motion, and simultaneously issued an Order for Ms. Work "to show cause why the Court should not: (1) sanction [Ms. Work] by way of a monetary penalty, additional CLE requirements, and/or suspension from practicing in front of the United States District Court for the Eastern District of Arkansas; and (2) report [Ms. Work's] conduct to the appropriate attorney disciplinary authority in Arkansas."[9]  As with the earlier Order concerning the Motion to Strike, this Order provides important background for today's ruling.  The Court therefore excerpts the relevant portions of the Order below.

> Plaintiffs' Motion for Leave to File Out-of-Time Response is DENIED.[*]  First, the Motion is not accompanied by a brief.  This violates Local Rule 7.2(a).  It also violates the Court's prior Order that explicitly required—consistent with Local Rule 7.2(a)—a supporting brief.[*]  Second, the Motion is not supported by a declaration from Plaintiffs' counsel.  This too violates the Court's prior Order.[*]  Third, the Motion does not add anything to Plaintiffs' earlier submissions with respect to "Plaintiffs' position on Rule 56 and whether Plaintiffs' counsel failed to

---

[*] *See* 211 F.3d 457, 464 (8th Cir. 2000).

[7] Feb. 7, 2025 Order (Doc. 79) at 2–6 (citation modified).

[8] Mot. for Leave (Doc. 80); Mot. to Amend (Doc. 81).

[9] Feb. 13, 2025 Order (Doc. 82) at 3.

[*] Mot. for Leave (Doc. 80).  Plaintiff[s'] Motion to Amend is also DENIED.  Mot. to Amend (Doc. 81).  The Motion to Amend provides a proposed Amended Motion for Leave.  Except for a single issue related to Local Rule 6.2(b), the Motion for Leave and the proposed Amended Motion for Leave are identical.  *Compare* Mot. for Leave (Doc. 80), *with* Ex. 1 (Proposed Am. Mot. for Leave) to Mot. to Amend (Doc. 81-1).  Accordingly, when the Court discusses the failures of the Motion for Leave, it should be understood that the proposed Amended Motion for Leave would not remedy those failures.  That is, the analysis is the same whether the Court looks to the Motion for Leave or the proposed Amended Motion for Leave.

[*] *See* Order (Doc. 79) at 5.

[*] *See id.*

read the Local Rule and the Final Scheduling Order."[*]  This too violates the Court's prior Order.[*]  Fourth, the Motion fails to explain why the conduct of Plaintiffs' counsel constitutes anything other than "the 'garden-variety attorney inattention' or 'inadvertence' that the Eighth Circuit generally finds to be inexcusable neglect."[*]  This too violates the Court's prior Order.[*]  Fifth, Plaintiffs did not, prior to the filing of the Motion, contact the District Defendants to determine whether they consented to or opposed the Motion.[*]  That violates Local Rule 6.2(b).  Each of these failures independently justify denial of the Motion.

Because the Motion for Leave to File Out-of-Time Response has been denied, the Court's prior Order results in the striking of all submissions filed by Plaintiffs in response to the District Defendants' Motion for Summary Judgment.[*]  Accordingly, the District Defendants' Motion to Strike is hereby GRANTED in full.[*]  The parties are instructed to be prepared to discuss any consequences that flow from the striking of those documents at the upcoming summary judgment hearing.

---

[*] *Id.* at 5–6.

[*] *See id.*

[*] *Id.* at 6.  In a few of the Motion's (very terse) numbered paragraphs, Plaintiffs tell of the technical difficulties that Plaintiffs' counsel encountered when filing documents on August 30, 2024.  *See* Mot. for Leave (Doc. 80) ¶¶ 5–10.  Of course, the relevant deadline was August 26, 2024.  So, whatever technical difficulties Plaintiffs' counsel experienced on August 30, those difficulties fail to explain why Plaintiffs did not file or attempt to file the responsive submissions by August 26.  It is true that the Motion states that "the logistics of preparing the multiple electronic filing packages proved more daunting than anticipated, and the packages were not fully assembled until the afternoon of August 30, 2024."  *Id.* ¶ 4.  But this "explanation" is entirely insufficient.  Plaintiffs provide no details concerning the nature of the alleged logistical problems or how they prevented Plaintiffs' counsel from filing the responsive submissions on or before August 26.  The Motion certainly does not explain why the actions of Plaintiffs' counsel were not "garden-variety attorney inattention" or "inadvertence."  *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 464 (8th Cir. 2000).

[*] *See* Order (Doc. 79) at 6.

[*] *See* Mot. to Amend (Doc. 81) ¶¶ 1–2.  The Motion for Leave was filed at approximately 1:00 a.m. on February 10, 2025.  Plaintiffs did not, before this filing, reach out to District Defendants to determine whether they consented to or opposed the Motion.  About five-and-a-half hours after the filing, Plaintiffs reached out to the District Defendants on this point.  About 14 hours after reaching out to the District Defendants, Plaintiffs filed their Motion to Amend.  Although the proposed Amended Motion for Leave was filed after Plaintiffs reached out to the District Defendants, the proposed Amended Motion for Leave still violates Local Rule 6.2(b) because it does not "state whether the adverse party opposes or does not oppose" the Motion for Leave (or the proposed Amended Motion for Leave).

[*] *See* Order (Doc. 79) at 5.  This means that Docs. 43–49 are struck—at least as they would otherwise be applicable to the District Defendants' Motion for Summary Judgment.  To the extent any of these filings could be read to respond to Defendant James Gibson's Motion for Summary Judgment, the Court will inquire of the parties at the summary judgment hearing whether the striking of these filings should apply to Mr. Gibson's Motion for Summary Judgment as well.

[*] Mot. to Strike (Doc. 64).  A portion of the District Defendants' Motion to Strike concerned evidentiary documents.  The Court need not address, and therefore does not address, the District Defendants' arguments as to why these particular documents should be struck.  That is because the global striking of Docs. 43–49 results in the striking of the specific evidentiary documents that the District Defendants challenged.

* * *

Now the Court must turn to an unpleasant but necessary task occasioned by the conduct of Plaintiffs' counsel in this litigation.  The Court orders Bridgette Leanne Work to show cause why the Court should not: (1) sanction her by way of a monetary penalty, additional CLE requirements, and/or suspension from practicing in front of the United States District Court for the Eastern District of Arkansas; and (2) report her conduct to the appropriate attorney disciplinary authority in Arkansas.*  In addition to Ms. Work's unacceptable, repeated legal mistakes—which the Court has outlined in its prior Order and in this present Order—it now appears that Ms. Work has lied to the Court.  In the original Motion for Leave, she stated: "In accordance with Local Rule, Plaintiffs' Counsel has reached out to Defendants' Counsel via email but had no response at the time of this filing."*  The Court believes this statement was intentionally false.  Indeed, in a Motion to Amend filed later in the day, Ms. Work acknowledges the falsity of her prior statement.*  She concedes that (1) she filed the original Motion for Leave at approximately 1:00 a.m. on February 10, 2025, and (2) she did not email the District Defendants until approximately 6:40 a.m. on February 10, 2025.*  Ms. Work provides no explanation (let alone an innocent explanation) for the falsehood contained in the original Motion.*

The lie just discussed is bad enough on its own.  But it also gives the Court additional reason to question the veracity of Ms. Work's professed interpretation of Federal Rule of Civil Procedure 56.  Recall that, in an earlier submission, Ms. Work asserted that Rule 56 authorized a plaintiff to respond to a summary judgment motion in any amount of time that the plaintiff desired, so long as that time period was "reasonable."*  As the Court explained in its prior Order, that professed interpretation was so ridiculous that the Court could not determine whether it was the result of terrible lawyering or a *post hoc* fabrication.*  Ms. Work's new lie pushes the Court closer to the *post hoc* fabrication theory.*  In any event, the way

---

* Should the Court choose to impose sanctions in this matter, it would be doing so pursuant to both Federal Rule of Civil Procedure 11 and its inherent authority.  *See* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."); *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) ("A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991))).

* Mot. for Leave (Doc. 80) ¶ 14.

* *See* Mot. to Amend (Doc. 81) ¶¶ 1–4.

* *Id.* ¶¶ 1–2.

* Ms. Work's conduct may amount to a violation of Federal Rule of Civil Procedure 11(b)(3).

* *See* Br. in Opp'n to Mot. to Strike (Doc. 67) at 2–3.

* *See* Order (Doc. 79) at 4–5.

* It doesn't help that, even after the Court's explanation of Rule 56 in its prior Order, Ms. Work still maintains (in the Motion for Leave and the proposed Amended Motion for Leave) that the "Federal Rules of Civil Procedure provide that a Response is to be filed within a 'reasonable' amount of time."  Mot. for Leave (Doc. 80) ¶ 11; Ex. 1 (Proposed Am. Mot[.] for Leave) to Mot. to Amend (Doc. 81-1) ¶ 11.  To the extent that Ms. Work is maintaining her frivolous

Ms. Work has litigated this case—including lying, asserting a ridiculous legal interpretation, and failing to follow basic rules of Court (and the Court's explicit Orders)—has done a disservice to her clients, to the other lawyers in this case, to the Court, and to the administration of justice. Ms. Work must appear in person before this Court at 9:00 a.m. on the 18th day of March 2025 to respond to the Court's concerns and, if she can, show cause as discussed above.[*] Ms. Work may, at her option, file a written brief with respect to this Show Cause Order, so long as she files it at least four days before the March 18 hearing. Ms. Work must review this Order and the Court's February 7, 2025 Order with her clients in the instant case, and she must invite those clients to the March 18 hearing.[*] The Court will allow Ms. Work to be represented by counsel with respect to this Show Cause Order if she chooses to do so.[10]

## III.    The Run-Up to the Show Cause Hearing

Subsequent to the Order just described, Plaintiffs fired Ms. Work and sought a voluntary dismissal of the case.[11] The request for voluntary dismissal was clearly tied to Plaintiffs' termination of Ms. Work.[12] Plaintiffs explained that proceeding *pro se* was not practically possible for them.[13] They wanted a voluntary dismissal to allow them time to find new counsel and consider their claims afresh.[14]

---

position concerning Rule 56 without responding to the Court's prior Order—which explained why that interpretation is ridiculous—such conduct, on its own, may amount to a violation of Federal Rule of Civil Procedure 11(b)(2).

[*] To be clear, Ms. Work should be prepared to show cause why the conduct described in the Court's February 7, 2025 Order and in the instant Order does not amount to a violation of Rule 11(b) and/or an abuse of the judicial process. Ms. Work should also be prepared to discuss what consequences (if any) are appropriate if the Court concludes that any of her conduct violated Rule 11(b) or otherwise abused the judicial process. Counsel for the Defendants should attend the show cause hearing. The Court requests their presence out of an abundance of caution to ensure that there are no improper *ex parte* communications regarding the substance of the instant litigation.

[*] No later than March 3, 2025, the Plaintiffs must file personal declarations swearing (under penalty of perjury) that Ms. Work has provided to them and reviewed with them this Order and the Court's February 7, 2025 Order. The declarations must also state (again under penalty of perjury) that the Plaintiffs have actually read the entirety of both Orders.

[10] Feb. 13, 2025 Order (Doc. 82) at 1–5 (citation modified).

[11] *See* Mot. to Release Attorney and Mot. for Voluntary Dismissal (Doc. 83); Timothy Kelley Decl. (Doc. 85) ¶ 28; Emily Kelley Decl. (Doc. 86) ¶ 29.

[12] *See* Br. in Supp. of Mot. to Release Attorney and Mot. for Voluntary Dismissal (Doc. 84) at 7–8.

[13] *See id.*

[14] *See id.* It should also be noted that a voluntary dismissal would be one way to avoid the potential negative substantive consequences associated with a failure to timely file responsive summary judgment papers. *See, e.g.*, Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(c).

This was not the only development to occur prior to the show cause hearing.  Most relevantly, Ms. Work filed a written Brief and Declaration responding to the Court's Show Cause Order.[15]  According to Ms. Work, "[t]he purpose of [the] brief [was] to explain, and when possible, justify [her] procedural errors and failures . . . ."[16]  The Court will summarize several relevant aspects of the Show Cause Brief and Declaration.

First, the Show Cause Brief begins by noting some biographical information about Ms. Work.[17]  Ms. Work has only been licensed to practice law since 2022, having first had a 20-year career working as a Speech-Language Pathologist and as a Special Education public-school administrator.[18]  From December 2018 until April 2023, Ms. Work "clerked for" Sharon Streett, a lawyer who typically represents public schools in education-related matters.[19]  Ms. Work is currently a solo practitioner.[20]  Her practice is generally limited to assisting families in disputes with school districts, defending educators before licensing boards, and "litigat[ing] domestic relations matters."[21]  And the instant case represented her "first independent filing[s] in any court."[22]

This information tracks with information provided by Plaintiffs themselves.  According to Plaintiffs, they "selected [Ms. Work for this matter] based upon her knowledge and experience in education law and school procedures."[23]  And "[Ms.] Work made clear [to Plaintiffs] throughout

---

[15] Br. in Resp. to Show Cause Order (Doc. 88); Work Decl. (Doc. 89).

[16] Br. in Resp. to Show Cause Order (Doc. 88) at 1.

[17] *See id.* at 2.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Br. in Supp. of Mot. to Release Attorney and Mot. for Voluntary Dismissal (Doc. 84) at 4.

her representation that she was a new attorney[,]" that she "had never [litigated] a case in [federal] District Court[,]" and that she "lack[ed]" experience "in the Court system."[24]    In fact, "[Ms.] Work . . . consulted with several attorneys, with [Plaintiffs'] permission and knowledge, during her representation [of Plaintiffs] to confirm interpretations of the law and to make certain that the case was progressing properly."[25]

Second, the Show Cause Brief provides a little more color as to what prompted Ms. Work's admission that she lied about having reached out to opposing counsel before filing the Motion for Leave to File Out-of-Time Response:

> On 02/10/25 at approximately 1:00 a.m., Plaintiffs' counsel filed a motion for leave to file out-of-time response which included the statement, "In accordance with Local Rule, Plaintiffs' Counsel has reached out to Defendants' Counsel via email but had no response at the time of this filing."   On 02/10/25 at approximately 6:40 a.m., Plaintiffs sent Opposing Counsel notification of the motion. . . . Opposing Counsel responded at 6:46 a.m. stating the following:
>
>> Hi Bridgette- I read your motion already this morning and it says you reached out to us via email but had no response at the time of your filing.  That's not true.  You did not contact us before you filed your motion as you stated to the court.  Are you planning to correct this misrepresentation with the Court?[26]

The point here is that Ms. Work's admission to her false representation—an admission that came later in the day along with her Motion to Amend the Motion for Leave—was not a product of Ms. Work's own conscience.  Instead, the admission only came after Ms. Work knew opposing counsel had caught her lying to the Court.

The Show Cause Brief does not provide any excuse, justification, or rationale for Ms. Work's lie.  And the Declaration simply says that, on the date in question (February 10, 2025),

---

[24] *Id.*

[25] *Id.*

[26] Br. in Resp. to Show Cause Order (Doc. 88) at 3–4.

"she filed the Motion at around 01:00 AM but due to fatigue delayed sending the Notification email until beginning of the workday 06:40 AM . . . ."[27]  To the extent this is an excuse at all, it makes no sense.  The Local Rule requirement at issue is not about sending a copy of the Motion to opposing counsel immediately upon filing.  The Local Rule requirement at issue is about conferring with opposing counsel before filing the Motion.[28]  So even if Ms. Work had sent District Defendants' counsel a copy of the Motion immediately after filing it (or right before filing it), the Motion would still have contained a false representation concerning conferring with opposing counsel.  Moreover, the deadline to file the Motion did not expire until February 14, 2025.[29]  There was no reason Ms. Work needed to file the Motion in the early hours of February 10, 2025.  She could have sent it to the District Defendants' counsel then, gone to sleep, and waited a day for his response.  Under these circumstances, "fatigue" as an excuse is entirely illogical.

Third, the Show Cause Brief admits that Ms. Work's Motion for Leave failed to comply with numerous directives from the Court, including (1) filing a brief in support of the Motion, (2) filing a declaration in support of the Motion, (3) explaining in more detail Ms. Work's position on Rule 56 and whether Ms. Work failed to read the Local Rules and the Court's Final Scheduling Order, and (4) explaining why Ms. Work's failure to timely file responses to summary judgment is not garden-variety inattention or inadvertence.[30]  But the Show Cause Brief and Declaration provide no explanation for the omission of these things from the Motion for Leave.

Fourth, the Show Cause Brief doubles down on Ms. Work's previous assertions that the untimeliness of Plaintiffs' responsive summary judgment papers was based on Ms. Work's

---

[27] Work Decl. (Doc. 89) ¶ 18.

[28] *See* Local Rule 6.2(b).

[29] *See* Feb. 7, 2025 Order (Doc. 79) at 5.

[30] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 3–4.

good-faith reliance on Federal Rule of Civil Procedure 56.[31]  To the extent the Court can understand the argument Ms. Work makes in the Show Cause Brief, Ms. Work seems to be saying that her thinking went as follows: (1) because the case was removed to federal court, the Federal Rules of Civil Procedure apply; (2) Rule 56 does not set out a timeframe for responding to summary judgment; (3) this means there is no rule and thus a default rule of reasonableness applies; (4) "reasonable" in this context means 30 days; and (5) "only business days [are] counted" because "the Court is closed on weekends and holidays."[32]  The Show Cause Brief characterizes these assumptions as "insane" and "ridiculous."[33]  But Ms. Work says that her "lack of experience in District Court contributed to [her] not seeking clarification or assistance."[34]

Nothing about this explanation makes any sense, and everything points to it being a complete fabrication.  Let's start with the Show Cause Brief's reliance on Rule 56's silence concerning summary judgment response deadlines.  This is a different justification than Ms. Work used in prior filings, where she argued that Rule 56 "provid[es] that the response [should be] within a 'reasonable' amount of time."[35]  The impetus for Ms. Work's shift in her Rule 56 excuse is no mystery: the Court's prior Orders called out the obvious inapplicability of any paragraph of Rule 56 that actually used the word "reasonable."[36]  Shifting justifications is one sign of an after-the-fact fabrication.

---

[31] *See id.* at 5–6.

[32] *Id.* at 5.

[33] *Id.* at 6.

[34] *Id.*  As will be explained later, Ms. Work's statement that she did not seek clarification or assistance concerning the timeline for responsive summary judgment papers turns out to not be true.  At the show cause hearing, Ms. Work testified that she sought the assistance from another attorney concerning "how many days [she] had" to file a response. Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 21.

[35] Br. in Opp'n to Mot. to Strike (Doc. 67) at 2; *see also* Mot. for Leave (Doc. 80) ¶ 11.

[36] *See* Feb. 7, 2025 Order (Doc. 79) at 3–4; Feb. 13, 2025 Order (Doc. 82) at 4.

Moving on, the Court notes that none of the summary judgment Responses filed by Ms. Work were filed 30 days after the Motions to which they were responding. The Response to McNew's summary judgment motion was filed 14 calendar days after the Motion.[37] The Responses to the District Defendants' summary judgment motion and to Gibson's summary judgment motion were filed 23 calendar days after those Motions.[38] If Ms. Work really believed she had 30 business days in which to file Responses, her filings would have been incredibly early for absolutely no reason. Moreover, if Ms. Work really believed she had 30 business days in which to file responses, she would not have "extended all [other] work deadlines and pushed personal commitments . . . to meet the expectations of the Local Rules of this Court."[39]

Indeed, reading between the lines, the Show Cause Brief more or less explains what really happened here:

> As previously stated, this was the first independent filing for [Ms.] Work as a solo practitioner. And the first time drafting [responses] to summary judgment [motions filed by] three separate defendants. [Ms.] Work scheduled fifteen (15) hours to draft response documents, allotting five hours per [motion]. However, the first response and all associated documents took more than fifteen hours and there were two additional responses to be drafted.
>
> [Ms.] Work extended all [other] work deadlines and pushed personal commitments, yet there was still insufficient time to meet the expectations of the Local Rules of this Court. All associated response documents were filed in the federal system as soon as completed. [Ms.] Work has gained more experience and is still learning to pace the completion of legal tasks.[40]

---

[37] *See* McNew's Mot. for Summ. J. (Doc. 22); Resp. to McNew's Mot. for Summ. J. (Doc. 33).

[38] District Defs.' Mot. for Summ. J. (Doc. 26); Gibson's Mot. for Summ. J. (Doc. 30); Resp. to Gibson's Mot. for Summ. J. (Doc. 40); Resp. to District Defs.' Mot. for Summ. J. (Doc. 43). The Show Cause Brief explains that Ms. Work actually tried to file the Responses to the District Defendants' summary judgment motion and to Gibson's summary judgment motion several days earlier, but she was apparently stymied by unusual technical difficulties. *See* Br. in Resp. to Show Cause Order (Doc. 88) at 6–7.

[39] Br. in Resp. to Show Cause Order (Doc. 88) at 6.

[40] *Id.* at 6.

In short, Ms. Work (1) knew the Local Rule required her responsive papers to be filed within 14 days of the corresponding initial motion; (2) couldn't get the work done in the 14-day period; and (3) chose to just do her best to get the papers filed as close to the Local Rule's deadline as she could. That's an entirely different story—and a much more plausible one—than Ms. Work's misinterpretation-of-Rule-56 explanation. But, in the Court's view, these two narratives are mutually exclusive.

One might reasonably ask why Ms. Work would feel the need to concoct her misinterpretation-of-Rule-56 explanation. But there is a ready answer. Ms. Work had a significant incentive to invent this explanation when she first responded to the District Defendants' Motion to Strike her untimely filings. This explanation at least presented a chance of persuading the Court that there was good cause or excusable neglect justifying a retroactive extension of the filing window or the allowance of a late filing.[41] The best read of the record is that Ms. Work invented her misinterpretation-of-Rule-56 excuse for this purpose, and was then pot-committed when the excuse started falling apart.[42]

## IV. The Show Cause Hearing

The show cause hearing did not begin well. After some pleasantries, the Court asked the hearing participants to introduce themselves.[43] At one table with Ms. Work were Plaintiffs and another lawyer named Robin Vail. Ms. Work introduced Ms. Vail as follows: "I . . . have my associate with me, Robin Vail."[44] Because Ms. Vail had not entered an appearance, the Court inquired further of Ms. Work.

---

[41] *See* Br. in Opp'n to Mot. to Strike (Doc. 67) at 2–4.

[42] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 9–12.

[43] Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 2.

[44] *Id.* at 3.

| | |
|---|---|
| **The Court:** | Very well.  I guess let me make sure I understand, is Ms. Vail acting as your attorney? |
| **Ms. Work:** | She is.  She's helping me close this case. |
| **The Court:** | Sorry.  Sorry. |
| **Ms. Work:** | She's not entered on this matter. |
| **The Court:** | She's not entered on this matter.  She's your associate as in she works for your law firm? |
| **Ms. Work:** | We work together frequently, yes. |
| **The Court:** | Let me ask that a little more clearly.  Does she actually work for your law firm? |
| **Ms. Work:** | No, sir. |
| **The Court:** | Okay.  She's not your lawyer in this matter? |
| **Ms. Work:** | She is my representation in this matter, yes, Your Honor.[45] |

In this colloquy, it sure seems like Ms. Work is telling the Court that Ms. Vail was her counsel for

purposes of the show cause hearing.  But that was not so.

| | |
|---|---|
| **The Court:** | She has not filed a notice of appearance.  Ms. Vail, are you her lawyer in this matter? |
| **Ms. Vail:** | Your Honor, in assisting her with the situation with the Plaintiffs, I am giving her legal advice.  I came to observe only today.  I specifically did not enter an appearance.  She wasn't aware she would need counsel to the extent that the Court -- |
| **The Court:** | So she does not need counsel. |
| **Ms. Vail:** | Yes. |
| **The Court:** | But this is one of those situations you can't be a little bit pregnant.  There are two roles for you here, or really, there is one role for you here if you're going to fulfill that role.  If you are her lawyer, then you're going to speak on her behalf, and you're going to act on her |

---

[45] *Id.* at 3.

behalf here today. I gave her the option that, if she wanted counsel, she could have counsel.

If you are not her lawyer, this is not sort of a phone-a-friend situation. You have not entered an appearance. You're not the lawyers for the Plaintiffs, and so you don't really have a role sitting up here. If you want to observe, you can certainly sit in the back, but those are really the two options you have.

**Ms. Vail:** Yes, Your Honor. I was brought here to observe only today, and I apologize, but since an appearance wasn't officially entered, then I will go back and sit in the audience.

**The Court:** Okay.[46]

Whether Ms. Work was confused about Ms. Vail's status, was trying to play coy with the Court to keep Ms. Vail at counsel table, or was outright lying to the Court, this interaction was a harbinger of things to come.

Ms. Work chose not to call any witnesses at the hearing.[47] The Court told Ms. Work it wanted to call her to the stand, but the Court gave Ms. Work the option to make a legal argument beforehand.[48] Ms. Work decided she wanted to testify first and then make a legal argument.[49] Ms. Work was sworn in and took the stand.[50] The Court reminded her that, because of the oath she took, "if [she] were to make any intentionally false statements to the Court, that could give rise to a charge of perjury . . . and . . . create significant criminal penalties."[51] The Court also reminded her that she should tell the Court immediately if she didn't understand a question asked by the Court (or anyone else) or something said by the Court (or anyone else).[52] And that if she didn't

---

[46] *Id.* at 3–4.

[47] *Id.* at 23–24.

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 5–6.

[52] *Id.* at 6.

do that, the Court would "assume that [Ms. Work] underst[ood] everything" being discussed.[53]
Ms. Work indicated that she understood all of this.[54]

Ms. Work declined to offer a factual narrative statement, so the Court began to ask
questions.[55] The Court first addressed Ms. Work's statement in her Motion for Leave that she
"contacted the other side, asked them for their position on [the Motion], and they had not
responded . . . ."[56] Noting the statement "turned out to be false," the Court asked Ms. Work to
"explain how and why it happened." Ms. Work said she didn't "have any other excuse for what
happened beyond what [she] explained to [the Court] in [her Brief]." The Court was not satisfied
with this response and the following colloquy occurred:

> The Court: Yeah, but the explanation I thought I heard was that you were tired
> or something. That doesn't -- and maybe that's not the explanation,
> so if I'm missing something, I need you to let me know because
> that doesn't seem to be a good explanation for lying.
>
> So I'm trying to figure out what the explanation was or -- you know,
> I'm characterizing it as a lie. Part of this hearing is to give you a
> chance of telling me I'm wrong and explaining if it wasn't a lie, or
> just admitting that it was a lie, if it was a lie, so that's what I'm
> trying to get at.
>
> Ms. Work: Certainly, when I sent the -- when I filed the initial motion with that
> statement, I did not send the e-mail. That is a correct statement. I
> sent it -- as soon as I could wake up the next morning, it was sent
> to opposing counsel.
>
> Fatigue did have a factor in that because I didn't feel like I could
> format an e-mail that was going to be in the same context as the
> motion that I had sent, and so I just didn't send it until the next
> morning. So I believe that's the only explanation that I can provide.
> It was fatigue related, but --

---

[53] *Id.*

[54] *Id.*

[55] *Id.* at 6–7.

[56] *Id.* at 7.

**The Court:**    I guess here's what I'm a little bit confused about there, though. So I issued my first order on February 7th. I told you that you had to file a motion for leave within a week, which a week would be February 14th. You filed this thing on February 10th. So what I don't understand is why you didn't first send the e-mail, for example, on February 10th, get a response, and then file [the Motion] any time on the 11th, 12th, 13th, or 14th?

**Ms. Work:**    I don't have an excuse for that. There is no excuse for that.

**The Court:**    Okay. I guess let me ask you this way, just to put a point on it: It strikes me that what you're telling me is that you agree you intentionally lied . . . ?

**Ms. Work:**    The intent to lie?

**The Court:**    Yeah. Did you know you were lying?

**Ms. Work:**    I knew that what I was saying was not -- not accurate, but it was happening almost simultaneously, and that was the way I was perceiving it, was it was all happening the same morning. But, no -- yes, there was no intent.

**The Court:**    What had to happen under the rule is not you just sending the e-mail. You had to send the e-mail and wait for a response in order to be able to truthfully say one way or the other whether you -- that you sent the e-mail and didn't get a response. If you send -- this is not a situation where you can send the e-mail at 11:00 o'clock and at 11:01 file a document saying I sent an e-mail but I didn't get a response, right?

The way the rule works is, you need to wait a sufficient amount of time to get a response or explain that you sent an e-mail X time, you waited half an hour, an hour, two hours, half a day, a day, and didn't get a response. So the rule -- what you said in there was not only that you sent it but that you didn't get a response. That strikes me as just a bald faced lie, and it sounds to me like you're telling me how I understood it is accurate?

**Ms. Work:**    Yes, Your Honor.

**The Court:**    Okay. Why did you do that? Why did you lie to the Court?

**Ms. Work:**    I don't have an excuse. I don't have an explanation beyond what I've already provided. It's very unfortunate that I'm in the

|  | situation.  I do so desperately apologize because it was not my intent for that to be construed as -- in a lie. |
|---|---|
| **The Court:** | Here's where -- on the one hand, I appreciate very much you copping to this up on the stand.  I do appreciate that.  Quite frankly, that's not the norm in situations like this.  But I also find myself struggling, and here's why I find myself struggling: Lawyers are not supposed to be like everyday people.  We are not supposed to hold oursel[ves] to just a sort of standard code of conduct.  We have a much higher ethical duty.

First of all, it's terrible for anybody to lie.  We all teach our children that, but for lawyers to be dishonest with anybody is a problem, with members of the bar is a huge problem, and with the Court, I don't know I could say it's unforgivable.  But it's almost an unforgivable problem.  We don't let people become members of the bar who are liars.

So I'm really struggling.  Honestly, I'm really struggling with -- I don't know that you are taking this seriously.  And, look, I get it.  People react to stressful situations differently.  But you're sitting there smiling, and you may be nervous.  Sometimes people smile and laugh when they're nervous; I get it.  But do you understand the gravity of what you've done, lying to a judicial officer? |
| **Ms. Work:** | Absolutely, I do.  I have -- I do smile.  I'm not going to apologize for smiling, but this -- I value this career.  This was not my first career.  I went back to law school so that I could represent people. I -- I am probably more ashamed and embarrassed than anything. I'm ashamed before the Court, obviously.  I'm ashamed that this is my first showing, and this is the way you're going to perceive me, as someone who has done this. |
| **The Court:** | Do you understand this could put your law license in jeopardy? |
| **Ms. Work:** | Absolutely, I do.  Yes.  And that's why I don't have any other excuse.  All I can tell you is this is what happened.  I apologize for all of it, and that's where I am.[57] |

Long story short, Ms. Work admitted to intentionally lying to the Court in her Motion for Leave, and Ms. Work provided nothing to mitigate the seriousness of her false representation.

---

[57] *Id.* at 7–11.

The Court next turned to the fact that Ms. Work's Motion for Leave failed to comply with both the Local Rules and with the Court's previous Order directing Ms. Work to include certain things in the Motion for Leave.[58]  Ms. Work agreed that she didn't do what was required but could not explain why.[59]  Indeed, her testimony just increased the gravity of her choice not to comply with the Court's directives.

| | |
|---|---|
| **The Court:** | And you responded [with a Motion for Leave], and we've already talked about one problem with that response.  But another problem with that response was, you just didn't do what I told you. |
| **Ms. Work:** | Right. |
| **The Court:** | And not just one thing, but repeatedly.  Can you explain why you didn't? |
| **Ms. Work:** | Beyond what I put in my brief, I really don't have another explanation except to say that you made it out -- |
| **The Court:** | But your brief doesn't say why you didn't.  Your brief admits that you didn't but doesn't explain to me why.  Now, we've moved from lying to a judicial officer to either flouting or ignoring what a judicial officer has said.  I need an explanation for that. |
| **Ms. Work:** | I don't know that I have an explanation.  It wasn't ignoring for certain.  I impulsively sent the motion and, honestly, forgot probably in following up with things.  I had drafted the other pieces.  They never got sent, and they were still very rough drafts, so it wasn't disregard for your order, certainly. |
| **The Court:** | If you had drafted the other pieces and then I issued the order to show cause, quite obviously frustrated that you didn't follow my order, why in this latest brief did you not explain and include those pieces? |
| **Ms. Work:** | Honestly, I didn't think that it was -- I didn't think that you would want to see anything that was a late submission at that point.  I didn't want to add to anything else that I had done in error. |

---

[58] *See id.* at 11.

[59] *See id.*

**The Court:**    Okay. For what it's worth, I don't believe that explanation. That doesn't sound accurate to me, so I want to make sure I understand. And, again, I want to be very clear. You are under oath now, okay? And we're talking about criminal sanctions, not civil sanctions.

What you are telling me is that you had portions drafted that explain why -- that explain -- you had portions drafted that were responsive, like, to my request for a -- my direction for a declaration, my direction for other things that you did not provide to the Court and you just forgot to put them in there. That's your testimony?

**Ms. Work:**    My testimony is that I had drafted the beginnings of a brief to go with the motion, and that I had drafted the first portion of the declaration, which I did include my declaration after the fact with this brief.

**The Court:**    I am very concerned that you already knew you screwed up, and you already knew the Court was ordering you to do something, and you just didn't do it. In the similar vein to lying, that tells me you're not taking court orders seriously.

Look, I'm really on one hand – I'm really trying to figure this out. This is not just about -- you know, this is not just about getting you on the record as to what you've done. I really want to understand. To be fair, you're not giving me a lot to understand, but I really want to understand.

Are you doing this career along with another career? Are you pressed for time in such a way that is making it impossible for you to function as a good lawyer? Is there something in your life that's otherwise going on that is causing issues in terms of how you're functioning as a lawyer? There must be an explanation for just ignoring my order. I mean, we're talking about reading comprehension. We're not talking about, you know, how experienced you are as a lawyer. We're talking about I wrote something on the page, and you didn't do it.

**Ms. Work:**    Yes, Your Honor. You did -- you laid everything out for me to try to explain everything after your [Order] from February 7th. You know, as I said, I -- you asked the question do I have things -- other career paths, no. I'm only an attorney and a mom and a wife. I don't have a huge caseload. I do work a few other cases, administrative law cases as well as in domestic relations, but I don't have such a huge caseload that I have difficulty managing all of it. If it's new information, it does take me a bit to learn the processes. Certainly,

there was a learning barrier with me in the federal court, as you can very well see.

I don't have any barriers to learning or barriers to reading comprehension.  I would say I have probably just traditional memory issues, but that wasn't the case here.  I just -- I simply neglected to do it, and it wasn't out of disrespect for the Court.  I can definitely say that.

**The Court:**   Okay.  But here's the problem: I understand you say that, but if a judge tells you to do something and you don't do it, that is definitionally disrespect, unless you've said you forgot it, which you just explained you didn't.  It wasn't a memory issue.  What is it that -- I mean, I certainly hope you wouldn't go up and spit on a judge.  Like, that's one kind of disrespect.  But other than that, the only kind of disrespect we're talking about is not doing the things that I ordered.

So when you say it's not disrespectful, I'm worried, again, you don't understand the gravity of what you've done or in this case didn't do.

**Ms. Work:**   The gravity, definitely I understand.  By the time that I got the order on the 14th, when you -- or the 13th, I apologize, February 13th, and looked back, I realized that I hadn't submitted it, and at that point, I was devastated because I realized I had sunk my own ship.  You had given me these opportunities to explain and provide information, and I didn't complete the task.  And at that point, it was just kind of trying to patch the holes in the boat so that I could finish the job.[60]

To sum up, *if* one assumes this portion of Ms. Work's testimony is truthful,[61] then Ms. Work is admitting that: (1) she knew she had already blown the deadline for filing responsive summary judgment papers; (2) she knew she had failed to file a Motion for Leave along with her untimely responsive summary judgment papers; (3) she knew that the Court indulged her by giving her an extra chance to file a Motion for Leave (long after she had filed the untimely responsive summary

---

[60] *Id.* at 11–15.

[61] Based in part on Ms. Work's demeanor when answering the Court's questions in this area, in part on her attempt to walk back some of her testimony in this area over the course of the Court's questioning, and in part on her billing records, the Court does not actually believe that Ms. Work began (in any substantive sense) drafting the required brief and declaration. *See* Ex. 6 (Contingency Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 15 (omitting any reference to researching or drafting a brief or declaration in support of the Motion for Leave).

judgment papers); (4) she knew the requirements set by the Court for filing said Motion for Leave; (5) she began drafting documents to meet those requirements; (6) at some point, however, she decided to file the new Motion for Leave (several days before the deadline) knowing she was doing so without the documents and information necessary to meet the Court's requirements; and (7) she can provide no reason why she decided to file the new Motion for Leave without the documents and information necessary to meet the Court's requirements.

The Court then turned to the reason that Ms. Work filed the responsive summary judgment papers late in the first place.[62]  After some back-and-forth between Ms. Work and the Court, the Court got the nub of the matter:

| | |
|---|---|
| **The Court:** | So -- okay.  Okay.  So that's a little different, I think.  I think then what you're saying -- and maybe that's what you meant to say in your briefing, but what you just said to me, I think, is, you didn't see any time limits in Rule 56(c) or any sort of even guess about what the idea was and so, therefore, you assumed the default was just make it reasonable? |
| **Ms. Work:** | Correct. |
| **The Court:** | Had you at that point read the local rule? |
| **Ms. Work:** | When I initially filed in September, no. |
| **The Court:** | Why not? |
| **Ms. Work:** | I didn't know they existed to be honest.  I really didn't. |
| **The Court:** | Hold on.  I would understand that answer except for the fact that references to it and to the 14-day requirement appeared in both the interim scheduling order that you had to have looked at, if you did your responsibilities under Rule 16, and the final scheduling order.  Did you ever read those documents? |
| **Ms. Work:** | I did.  Yes, Your Honor. |
| **The Court:** | So if you read -- when did you read those documents? |

---

[62] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 18–21.

**Ms. Work:**     As soon as they were issued, I read those documents.  We had several scheduling orders, and I read them each.

**The Court:**    Did you just forget that?  Because they have in there -- they say in there both a reference to the local rules, which would put you on notice that there were things like local rules, and that a local rule detailed this specific issue, and then even more than referencing the local rules, they had the 14-day response requirement in them.

So if you have read them, did you just ignore them?  Did you forget them?  I don't understand.  Did you think that Rule 56 just made them null and void?

**Ms. Work:**     I don't think I believed that it made it null and void, and I certainly didn't forget it.  I really thought that there was -- it gave the dates on the scheduling order, and I looked at the dates that things were due for motions.  I was really hoping for all of those motions to come in, you know, August -- or let's see, August the 12th I think was the date that theirs were due for motions for summary judgment or other motions.

The 14-day timeline, I don't -- I don't know if I just didn't appreciate 14 days, or if I was just relying upon the fact of, you know, I'm going to get it in as soon as I can.  I am going to be as reasonable I can because that's all I can see, and --

**The Court:**    So is it your testimony then you knew in the scheduling orders there was a 14-day timeline, but you essentially said, well, if I can't do it, I'm just going to get it in in a reasonable amount of time?

**Ms. Work:**     That's what I -- I don't remember my thought processes at that point because I've reviewed it so many times now.  I would love to say that that is exactly what my thought process was, but I can't speak to where my brain was at that point.

**The Court:**    But at that point, you did -- you had read the local rule?

**Ms. Work:**     Yes -- no, I had not read the local rule.

**The Court:**    You had read the scheduling orders?

**Ms. Work:**     Yes.

**The Court:**    So you knew there were such things as local rules?

**Ms. Work:**    I saw the reference to them, yes.  I don't know that I knew what they were, but yes.

**The Court:**    I saw in your briefing, or maybe in one of the other documents attached to your briefing, that you had said you sought advice because this was your first case in federal court.  You sought advice from another -- from another lawyer.  I don't know what other lawyer, but from another lawyer, to make sure you were staying on track and that the case was staying on track.  Did you seek advice on this issue?

**Ms. Work:**    On what we're here for today?

**The Court:**    Yes.

**Ms. Work:**    Not with the same attorney, no.

**The Court:**    From any attorney?

**Ms. Work:**    Yes.

**The Court:**    And those attorneys told you what?

**Ms. Work:**    As far as in preparation for today?

**The Court:**    No.  No.  I'm sorry.  Let me make sure I'm asking a better question; my fault.  Did you seek advice at the time of summary judgment, did you seek advice from attorneys as to what the rule was when you had to file a response, how many days you had?

**Ms. Work:**    I did.

**The Court:**    The attorneys to whom you sought the advice, what was the response?

**Ms. Work:**    The attorney that I sought the advice, they told me that I didn't even have to respond.

**The Court:**    Well, technically, that's true.  You don't have to, but that doesn't mean you get to respond late.  Did they give you advice on the time you had to respond?

**Ms. Work:**    No.

**The Court:**    Did you ask about that?

**Ms. Work:**     I asked because I got one motion a few days before the other two motions, and that was whenever I realized it was going to snowball my schedule and I hadn't budgeted enough time, so that was whenever I began seeking some guidance, and that was the response that I got, was, well, you don't even have to respond, which was not helpful.[63]

There are a couple of relevant takeaways here.  Ms. Work admits that she read the Court's Final Scheduling Order when it was first issued.  (Indeed, her billing records suggest that she read this four-page Final Scheduling Order *very* thoroughly, as she logged an astounding two hours for reviewing the Order and then sending it to her clients.[64])  Ms. Work admits that she knew the Scheduling Order (1) set a 14-day deadline for filing papers responsive to Defendants' summary judgment motions, and (2) made reference to the Local Rules.[65]  Ms. Work admits attempting to meet the 14-day deadline.  And Ms. Work admits that, once she figured out that she was going to miss the 14-day deadline, she sought advice from another lawyer about what to do.  But when she did not get directly-responsive advice from that lawyer, she did nothing further.  She didn't ask opposing counsel.  She didn't ask the Court.  She did nothing.

In light of the foregoing, Ms. Work's testimony offered nothing to suggest a sincere, good-faith belief that she could file responsive summary judgment papers in "a reasonable time" after the summary judgment motions were made.  No other lawyer told her that.  It is not something she was mistakenly taught in law school.  She didn't get it from the text of Rule 56.  And she didn't think Rule 56 somehow rendered the 14-day time limit in the Court's Scheduling Order null and void.[66]  Instead, the reality appears to be that she treated the Court's established deadlines as

---

[63] *Id.* at 18–21.

[64] *See* Ex. 6 (Contingency Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 5.  Plaintiffs were never actually billed for this work.  *See infra* at pages 30–32.

[65] Despite reading the reference to the Local Rules (something at that time she did not know existed), Ms. Work did not try to determine what the Local Rules were.  *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 18–20.

[66] *Id.* at 19.

aspirational as opposed to mandatory, and then later invented out of whole cloth her Rule-56-silence-means-a-reasonable-time-period excuse.[67]

Near the close of questioning, the Court shifted its focus to questions designed to test Ms. Work's remorsefulness and to see if Ms. Work had grown from this experience. That, too, did not go very well.

> **The Court:** I just want to think if I have any more questions for you before I have you step down. What have you learned from this?
>
> **Ms. Work:** A tremendous amount. Since you issued the order to show cause, really even prior to that, whenever you issued the first order on the 7th, the amount of research that I have done into the local rules, to the application of that, to how you have responded as a judge to other -- not so much attorneys but maybe just other parties who have done things out of the timeline.
>
> It's definitely a hurdle that I have had to go over, but very well worth it. I mean, I hate that it's at this expense, but procedurally, I do feel better about where I would be going in my next opportunity, but it's been a big learning curve in the past month.[68]

To be polite about it, the Court was mystified by this missing-the-forest-for-the-trees response. So the Court decided to be even more pointed.

> **The Court:** Anything about whether lying to the Court is a good idea or not?
>
> **Ms. Work:** Oh, I will never again have an immediate e-mail and a motion sent at the same time; that won't ever happen again. The lying part, no, that was never my intent, and it should have never been included in there.[69]

---

[67] *See supra* page 14.

[68] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 23.

[69] *Id.*

Ms. Work was then excused as a witness.[70]  She returned to counsel table and declined calling

witnesses or making a legal statement.[71]  To the extent portions of her testimony can be stitched

together as a legal statement, it is this:

> Your Honor . . . [y]ou know, you gave me every opportunity to fix this, and I missed the cues.  I just missed them.  So I don't have any witnesses or really much else to add.[72]
>
> * * *
>
> You know, honestly, I hope that you will be merciful in whatever you decide, but I didn't comply with what you wrote or what you requested.  I do understand taking the consequences as they need to be dealt with because I didn't do what you asked me to do, again, not out of sheer disrespect or just being, you know, a moron about it.  But I just didn't do it for whatever reason or did it late.
>
> So I do believe in consequences, and I do -- I do accept whatever Your Honor decides to do.[73]

The Court made clear it was taking the matter under advisement as opposed to issuing a final ruling

from the bench.[74]  But the Court did share some of its then-current thinking about the matter:

> **The Court:**   Ms. Work, I'm honestly dismayed, perhaps even more dismayed than when I came in here.  I imagined there was going to be at least some type of reason for lying to the Court and reason for ignoring the Court's orders and potentially something I didn't understand about the Rule 56 stuff.  I find your testimony to have been very concerning and very worrisome.
>
> No. 1, I will say this is not my ruling.  I'm going to write something on this as the rule counsels, but I have to tell you I think you just committed a bald faced lie to the Court, and I don't find you to be very remorseful.  I find you to be worried about the consequences, and it doesn't appear to me you fully learned your lesson.
>
> You don't have any reason that you ignored the Court's order.  You seem to think that's okay, and it appears to me from the Rule 56 colloquy we've had, that you knew you had read and you knew

---

[70] *Id.*

[71] *Id.* at 23–24.

[72] *Id.*

[73] *Id.* at 23.

[74] *Id.* at 24.

about the 14-day deadline from my scheduling orders, you knew there was something called the local rules, but just decided, ahh, I don't have to look at them.  And this Rule 56 sort of argument, quite frankly, seems to me to be a trying to kind of get out of jail free card.

I don't believe it.  It doesn't make any sense, certainly not when the 14-day deadline was in the scheduling orders, and it strikes me that you called an attorney to ask for help on this, didn't get an answer, and then didn't do any more research or didn't call another attorney.  It's exactly what shouldn't happen, and you essentially just decided – it's another example, quite frankly, of flouting the Court's order.  You said, well, the Court said 14 days in the order, but I can't do it in 14 days, so that's that.  Maybe that works in state court.  I can't imagine it does.  Maybe it works in front of state administrative boards or federal administrative boards, but it does not fly in federal court.  I can guarantee you, it's not me as a judge who is saying this.  It just doesn't fly in federal court, period.

I have to tell you I am certainly going to issue a monetary sanction.  I am certainly going to refer you to the state bar for disciplinary proceedings at their discretion.  I have not yet decided whether I'm going to ask the full court to suspend you or prevent you from practicing here in federal court; that's a big step.  It's not a step that I take lightly.  And, quite frankly, in some sense, I really don't want to have to waste the time of my colleagues, but given your answers today, it's something I am still considering.  I have not been put at ease or assuaged at all.

I guess let me ask you this: Do you currently have any cases pending in federal court?

**Ms. Work:**     No, Your Honor.  I do not.

**The Court:**     Do you have any plans to have cases pending in federal court?

**Ms. Work:**     Not at this time, no.

**The Court:**     Part of my sanctions are going to include a requirement to do more CLE, continuing legal education, on federal rules.  I am going to give you a year to do it.

I guess, let me ask you this: I don't have the power to suspend you from work in federal courts as a sole district judge; that power comes from the Court as a whole.  In determining whether I'm going to ask the full court to do that, it would help to know if you would just voluntarily agree with me that you will not do work in the federal

| | |
|---|---|
| | courts for the next year before you are done with your CLEs.  I think that would help me decide whether to bring this to the full court or not. |
| **Ms. Work:** | Absolutely.  I will not be filing anything in the federal court for at least one year. |
| **The Court:** | I appreciate that.  That's obviously voluntary on your part. |
| **Ms. Work:** | Certainly. |
| **The Court:** | But I appreciate that.  Okay.  You all will get a written order from me soon but not so soon.  I wouldn't expect it until at least April or May, but you will get something from me in April or May.[75] |

## V.    Post-Hearing Developments

There was one further shoe to drop.  At the show cause hearing, the Court made limited inquiries into the financial balance sheet of Ms. Work's solo law practice.[76]  This was done to help the Court determine what might be an appropriate monetary penalty if the Court concluded that Ms. Work's misconduct justified (and required) a monetary penalty.

| | |
|---|---|
| **The Court:** | How much have you been paid for this case? |
| **Ms. Work:** | Nothing. |
| **The Court:** | No retainer? |
| **Ms. Work:** | No. |
| **The Court:** | Does that mean you're working on contingency essentially? |
| **Ms. Work:** | I was.  Yes, sir. |
| **The Court:** | You've been an attorney for two years? |
| **Ms. Work:** | Yes, sir. |
| **The Court:** | About? |

---

[75] *Id.* at 24–27.

[76] *Id.* at 21–22.

| | |
|---|---|
| **Ms. Work:** | About, yeah. |
| **The Court:** | Each year, how much money would you say you make from being an attorney?  Just so you understand, the reason I am asking you these questions is I have to understand this information to fashion what I think is a fair monetary penalty, if I decide to go down that route. |
| **Ms. Work:** | Certainly.  I would say maybe $20,000. |
| **The Court:** | Each year? |
| **Ms. Work:** | Yes.[77] |

With respect to potential remuneration for this case, Ms. Work's testimony is the definition of truthful-but-misleading.  Shortly after the show cause hearing, Plaintiffs submitted documents to the Court that showed they had paid Ms. Work $18,881.34 for work related to the incident (H.K.'s arrest at school) that was the focus of this case.[78]  After reviewing the submission, and after seeking (and reviewing) a response from Ms. Work,[79] the Court understands that (1) this $18,881.34 was for the litigation of administrative complaints related to this incident as opposed to court-based litigation, and (2) the litigation of the administrative complaints was subject to a retainer and fee-per-hour agreement, while the court-based litigation was subject to a contingency agreement.[80]

Ms. Work's testimony on the remuneration issue was not perjury.  But it wasn't the full story either.  And Ms. Work wasn't just some lay person testifying.  She was a lawyer, who (by her

---

[77] *Id.*

[78] Pls.' Notice to the Ct. (Doc. 93).  This is in addition to a $1,800 retainer.  *See id.* at 14–20; Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 11.

[79] Sealed Ex Parte Notice to the Ct. (Doc. 99).

[80] There is one exception.  Ms. Work's billing records show that, under the retainer and per-hour agreement, she charged Plaintiffs $700 (for 3.5 hours) to research "[f]iling a civil suit in state court o[r] federal court" and whether there are "differences [in] price, process, [and] struct[u]re."  *See* Ex. 2 (Fee-Per-Hour Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 8.  This is directly inconsistent with Ms. Work's assertion to the Court that the retainer and per-hour agreement only addressed "legal work related to administrative agencies" and not "litigation or pre-litigation" work.  *See* Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 6.

own admission) had previously ignored a Court Order and lied to the Court. Any reasonable—and reasonably truthful—lawyer would have told the Court about the money Plaintiffs had paid for the related administrative litigation. Ms. Work's testimonial coyness on the remuneration point simply amplifies the Court's concerns regarding her remorsefulness and whether she has learned her lesson.

## **FINDINGS OF FACT**

The Court makes the following findings of fact based on the entire record, including but not limited to the information discussed in the Background section of this Order.

1. Ms. Work was Plaintiffs' counsel here in federal court from the filing of this lawsuit through March 18, 2025.[81]

2. Ms. Work is a solo practitioner.[82] She has been a lawyer since September 30, 2022.[83] For the 20 years before that, she worked in speech pathology and school administration.[84]

3. The instant case is the first federal court case (and maybe the first case in any court) that Ms. Work ever handled on her own.[85] Ms. Work's practice is generally limited to education-related administrative proceedings and domestic relations cases.[86]

4. In addition to being a lawyer, Ms. Work describes herself as a mother and a wife.[87]

---

[81] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 23; Pls.' Notice to the Ct. (Doc. 93) at 4–8, 21–25.

[82] Br. in Resp. to Show Cause Order (Doc. 88) at 2.

[83] *See* Attorney Search Results for "Bridgette Work," ARKANSAS ADMINISTRATIVE OFFICE OF THE COURTS, https://attorneyinfo.aoc.arkansas.gov/info/attorney/attorneysearch.aspx (enter "Work" in the box following "Last Name Starts With" and "Bridgette" in the box following "First Name Starts With" and click the "Find" button) (last visited May 27, 2025).

[84] Br. in Resp. to Show Cause Order (Doc. 88) at 2.

[85] *See id.* at 2, 6.

[86] *Id.* at 2.

[87] Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 14.

5.      On November 16, 2023, the Court issued a Final Scheduling Order that, *inter alia*, explained that: (a) "Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Local Rules 7.2 and 56.1"; (b) "Local Rule 7.2(b) provides: 'Within fourteen (14) days from the date of service of copies of a motion and supporting papers, any party opposing a motion shall serve and file with the Clerk a concise statement in opposition to the motion with supporting authorities'"; (c) "Fed. R. Civ. P. 6, including subparagraph 6(d), determines how the days are counted under this local rule, unless the Court specifies otherwise"; and (d) "for cause shown, the Court may by order shorten or lengthen the time for the filing of responses and replies."[88]

6.      Ms. Work read that Scheduling Order very closely shortly after it was published.[89] From it, Ms. Work understood that responsive papers to each summary judgment motion were due 14 days after that summary judgment motion was filed.[90]

7.      Ms. Work read the Scheduling Order's references to the Local Rules.[91]  Before reading the Order, she didn't know that there was such a thing as Local Rules.[92]  After reading the Order's reference to Local Rules, she did not do any work to find or learn about the Court's Local Rules.[93]  She did not ask opposing counsel about them; she did not ask the Court about them; and she did not ask any other lawyer about them.

---

[88] Final Scheduling Order (Doc. 15) § 7 (citation modified).

[89] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 18; Ex. 6 (Contingency Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 5.

[90] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 18–20; *see also supra* page 13–14.

[91] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 20.

[92] *See id.*

[93] *See id.* at 20–21.

8.      On August 9, 2024, Defendant McNew filed a Motion for Summary Judgment.[94] Consistent with the Final Scheduling Order's requirements, Ms. Work filed Plaintiffs' responsive papers 14 calendar days later—on August 23, 2024.[95]

9.      On August 12, 2024, the District Defendants filed a Motion for Summary Judgment and Defendant Gibson filed a separate Motion for Summary Judgment.[96] The 14-day deadline to respond ended on August 26, 2024.[97] As of August 12, 2024, Ms. Work knew the deadline to respond was August 26, 2024.[98]

10.      Ms. Work tried to meet the deadline.[99] This was Ms. Work's first time responding to summary judgment motions on her own.[100] And the work overwhelmed her.[101]

11.      Prior to the August 26, 2024, deadline, Ms. Work knew that she was not going to be able to complete the responsive papers on time.[102] And, not knowing what to do about that, she panicked.

12.      Ms. Work reached out to an unnamed attorney for guidance, but all that attorney told her was that the Federal Rules do not require any response to summary judgment motions.[103]

---

[94] McNew's Mot. for Summ. J. (Doc. 22).

[95] Resp. to McNew's Mot. for Summ. J. (Doc. 33). *See also* Feb. 7, 2025 Order (Doc. 79) at 2, 2 n.9 ("To be more specific about it, the docket reflects that (1) the Response was filed on August 23, 2024, and entered on August 24, 2024; and (2) the Brief and the Response to the Statement of Material Facts were filed and entered on August 24, 2024. The Court is assuming that either all of these documents were actually filed on August 23, 2024, or there were some technical problems that pushed the filing of the latter documents to the following day.").

[96] District Defs.' Mot. for Summ. J. (Doc. 26); Gibson's Mot. for Summ. J. (Doc. 30).

[97] *See* Local Rule 7.2(b).

[98] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 18–21.

[99] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 6.

[100] *See id.*

[101] *See id.*; *see also* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 21.

[102] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 6; Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 21.

[103] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 21.

She did not reach out to opposing counsel to ask what to do.  She did not reach out to the Court to ask what to do.  She did not file a motion requesting additional time to file her responsive papers.  Instead, she just made the decision to put her head down, get done with (and file) the papers as soon as possible, and hope for the best.[104]

13.     Ms. Work did not complete her responsive papers until Friday, August 30, 2024.[105] She tried to file them on that day, but she had technical difficulties doing so.[106]  Her PACER filing authority became blocked.[107]  She had time to hand deliver the papers on August 30, but she did not do so.[108]  The following Monday was Labor Day, so the Court was closed and her PACER credential issue persisted.[109]  She could have hand-delivered the papers on Tuesday, September 3, 2024, but she did not do so.  She also could have filed electronically on September 3, since her credentials were restored that afternoon.[110]  Instead, she filed the papers on Wednesday, September 4, 2024, without a motion for leave to file out-of-time papers.[111]

14.     The Court does not believe Ms. Work's written or oral assertions that, at the time, she thought her papers were timely because she thought she had "a reasonable time" to file them and that "reasonable" meant 30 *business* days.  In addition to all the information provided in the Background section above (and in the first 13 paragraphs of this Findings-of-Fact section), the Court notes two more things that belie her assertions.  First, an August 27, 2024 submission by

---

[104] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 6.

[105] *See id.* at 7; Mot. for Leave (Doc. 80) ¶¶ 3–4.

[106] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 7; Mot. for Leave (Doc. 80) ¶¶ 5–7.

[107] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 7; Mot. for Leave (Doc. 80) ¶ 7.

[108] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 7.

[109] Mot. for Leave (Doc. 80) ¶ 8.

[110] *See id.* ¶ 9.

[111] *See id.* ¶ 10.

Defendant McNew had specifically noted that Plaintiffs' summary judgment papers responding to the District Defendants' Motion and to Gibson's Motion were due on August 26, 2024.[112]  Second, the Court's Final Scheduling Order directed the parties to Federal Rule of Civil Procedure 6, which specifically notes that court timelines are measured in calendar days (not business days).[113]

15.    On September 25, 2024, the District Defendants filed a Motion to Strike the responsive papers as untimely.[114]  On October 3, 2024, Ms. Work filed a Response to that Motion on behalf of Plaintiffs.[115]   Ms. Work electronically signed this response with an "/s/."[116]  This response included false representations.  First, Ms. Work falsely represented that Federal Rule of Civil Procedure 56 "direct[s]" and "provid[es]" that a summary judgment response be filed "within a 'reasonable' amount of time."[117]  That is just not true.  Second, Ms. Work falsely represented that, based on Rule 56, she believed (at the time of filing her responsive papers) that her responsive papers were not late.[118]  Ms. Work concocted this story in an attempt to manufacture good cause or excusable neglect and thereby get the Court to allow the late filings.

16.    On February 7, 2025, the Court issued an Order holding the Motion to Strike in abeyance.[119]  The Court set out its serious skepticism with the explanations Ms. Work provided in her Response to the Motion to Strike.[120]  And the Court noted that Ms. Work had not filed a motion

---

[112] Joint Mot. for Extension of Time (Doc. 37) ¶ 2.

[113] *See* Final Scheduling Order (Doc. 15) § 7.

[114] Mot. to Strike (Doc. 64).  There were other reasons the District Defendants wanted to strike the papers as well.  *See* Br. in Supp. of Mot. to Strike (Doc. 65) at 6–9.

[115] Br. in Opp'n to Mot. to Strike (Doc. 67).

[116] *Id.* at 6.

[117] *Id.* at 1–2.

[118] *Id.* at 2–3.

[119] Feb. 7, 2025 Order (Doc. 79) at 1.

[120] *See id.* at 3–5.

for leave to file papers out-of-time.[121]  The Court said the untimely papers would be struck unless Ms. Work filed such a motion "within one week from the date of [its] Order."[122]  The Court explained that any motion made "must (1) comply with all applicable Local Rules; (2) include, in addition to the Motion and supporting Brief, a Declaration signed by Plaintiffs' counsel swearing to all relevant facts concerning the blown deadline; (3) explain in more detail—and in light of what the Court has said above—Plaintiffs' position on Rule 56 and whether Plaintiffs' counsel failed to read the Local Rule, the Final Scheduling Order, and Doc. 37; and (4) explain why this is not the 'garden-variety attorney inattention' or 'inadvertence' that cases like *Lowry v. McDonnell Douglas Corp.* generally find to be inexcusable neglect."[123]

17.     Ms. Work read that Order carefully.[124]  And Ms. Work read the Local Rules.[125]  In short, Ms. Work knew what was required of her if she chose to file a motion for leave to file papers out of time on behalf of Plaintiffs.

18.     Ms. Work had until February 14, 2025, to file a motion for leave.[126]  She filed the Motion for Leave at around 1:00 a.m. on February 10, 2025.[127]  She signed the Motion.[128]

19.     The Motion was (significantly) less than two pages in length.[129]

---

[121] *See id.* at 5.

[122] *Id.*

[123] *Id.* at 5–6.

[124] *See* Work Decl. (Doc. 89) ¶¶ 14–15.

[125] *See* Br. in Resp. to Show Cause Order (Doc. 88) at 9; Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 23.

[126] *See* Feb. 7, 2025 Order (Doc. 79) at 5.

[127] *See* Mot. for Leave (Doc. 80); Work Decl. (Doc. 89) ¶ 18.

[128] *See* Mot. for Leave (Doc. 80) at 3.

[129] *See* Mot. for Leave (Doc. 80).

20.    The Motion was not accompanied by a brief, as required under the Local Rules and the Court's prior Order.[130]  Ms. Work knew a brief was required, but intentionally filed the Motion without one.[131]

21.    The Motion was not accompanied by a declaration, as required by the Court's prior Order.[132]  Ms. Work knew a declaration was required, but intentionally filed the Motion without one.[133]

22.    Ms. Work lied to the Court at the show cause hearing when she testified that, prior to filing the Motion for Leave, she had begun drafting a brief and declaration to support the Motion for Leave.[134]

23.    The Motion did not explain in more detail Plaintiffs' position on Rule 56 and whether Plaintiffs' counsel failed to read the Local Rule, the Final Scheduling Order, and Doc. 37. And the Motion did not explain why the lateness of the responsive summary judgment papers was not the "garden-variety attorney inattention" or "inadvertence" that cases like *Lowry v. McDonnell Douglas Corp.* generally find to be inexcusable neglect.[135]  Ms. Work knew the Court's Order made these two things necessary, but intentionally chose to file the Motion without doing them.[136]

24.    Ms. Work could not or would not provide any reason for each of the foregoing omissions.[137]

---

[130] *See* Local Rule 7.2(a); Feb. 7, 2025 Order (Doc. 79) at 5.

[131] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 11–13.

[132] *See* Feb. 7, 2025 Order (Doc. 79) at 5.

[133] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 11–13.

[134] *See id.* at 12–13; *see also* Ex. 6 (Contingency Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 15 (omitting any reference to researching or drafting a brief or declaration in support of the Motion for Leave).

[135] *See* 211 F.3d 457, 464 (8th Cir. 2000).

[136] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 11–13.

[137] *See id.* at 12.

25.      In the Motion, Ms. Work falsely represented that, "[i]n accordance with Local Rule, Plaintiffs' Counsel has reached out to Defendants' Counsel via email but had no response at the time of this filing."[138]  At the time of filing, Ms. Work knew that, in fact, she had not reached out to Defendants' counsel regarding this Motion.[139]  Ms. Work admitted to this misrepresentation late in the evening on February 10, 2025,[140] but only after opposing counsel confronted her with the falsity of her initial statement and inquired whether she was going to "correct [the] misrepresentation with the Court."[141]

26.      Ms. Work has provided the Court with no plausible reason why she made this false representation.  Her assertion that fatigue had something to do with this misrepresentation makes no sense, especially given the extremely limited content of the Motion and the numerous days she still had left before the deadline to file. [142]

27.      Ms. Work earns about $20,000 per year from her legal work.[143]

28.      Plaintiffs paid $18,881.34 plus an $1,800 retainer to Ms. Work.[144]  Nearly the entire fee was for legal services related to administrative proceedings concerning H.K.'s arrest at

---

[138] Mot. for Leave (Doc. 80) ¶ 14.

[139] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 8–9.

[140] *See* Mot. to Amend (Doc. 81) ¶¶ 1–4.

[141] Ex. 2 (Feb. 10, 2025 Email from District Defs.' Counsel) to Br. in Resp. to Show Cause Order (Doc. 88); Ex. 3 (Feb. 10, 2025 Email Responding to District Defs.' Email) to Br. in Resp. to Show Cause Order (Doc. 88).

[142] *See* Work Decl. (Doc. 89) ¶ 18; Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 8.

[143] Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 22.

[144] *See* Pls.' Notice to the Ct. (Doc. 93) at 14–20; Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 11.

school.[145]  But this fee included $700 for research to decide whether filing a complaint in state court or federal court was best.[146]

29.    Aside from the $700 just mentioned, Plaintiffs have not paid Ms. Work for the services she provided litigating the instant court case.[147]  That is because such services were performed under a contingency fee agreement.[148]

30.    Plaintiffs have paid $2,827.75 for the costs incurred litigating the instant case—all of which are related to the several depositions taken during discovery in this case.[149]  These payments were not tendered to Ms. Work; instead, they were directly provided to various court reporting services.[150]

31.    Plaintiffs have now terminated Ms. Work.[151]

32.    Upon Plaintiffs' Motion,[152] the Court has dismissed Plaintiffs' claims without prejudice.[153]  In support of their Motion, Plaintiffs explained they could not proceed *pro se* and needed to re-evaluate their claims with a new lawyer.[154]

---

[145] *See* Ex. 2 (Fee-Per-Hour Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99); Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 10.

[146] *See* Ex. 2 (Fee-Per-Hour Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99) at 8.

[147] *See* Pls.' Notice to the Ct. (Doc. 93) at 1–2.

[148] *See id.*; Ex. 6 (Contingency Contract Billing Records) to Sealed Ex Parte Notice to the Ct. (Doc. 99).

[149] *See* Pls.' Notice to the Ct. (Doc. 93) at 1–2, 27–30; Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 9.

[150] *See* Pls.' Notice to the Ct. (Doc. 93) at 27–30; Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 9.

[151] *See* Timothy Kelley Decl. (Doc. 85) ¶ 28; Emily Kelley Decl. (Doc. 86) ¶ 29.

[152] Mot. to Release Attorney and Mot. for Voluntary Dismissal (Doc. 83); Pls.' Notice to the Ct. (Doc. 93) at 1–2.

[153] Apr. 30, 2025 Order (Doc. 96).

[154] Br. in Supp. of Mot. to Release Attorney and Mot. for Voluntary Dismissal (Doc. 84) at 7–8.

33.    Ms. Work is not remorseful for lying to the Court and ignoring a Court Order.[155] And she does not understand why it is a big deal.[156]  To the extent any of her testimony suggests otherwise, the Court finds it to be contrived for the purposes of avoiding consequences.  In short, there is nothing in the record to suggest that, absent real consequences here, Ms. Work would not lie or ignore Court Orders in the future.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 11(b) provides that "[b]y presenting to the Court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney" is certifying certain things "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ."[157] Among other things, an attorney certifies that "the factual contentions" in the filed documents "have evidentiary support" and the "legal contentions" in the filed documents "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[158]

Where, "after notice and a reasonable opportunity to respond," the Court concludes that an attorney has violated Rule 11(b), "the [C]ourt may impose an appropriate sanction on [the] attorney . . . that violated the rule . . . ."[159]  The sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[160]  Such sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed

---

[155] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 23–25.

[156] *See id.* at 10, 14.

[157] Fed. R. Civ. P. 11(b).

[158] Fed. R. Civ. P. 11(b)(2)–(3).

[159] Fed. R. Civ. P. 11(c)(1).

[160] Fed. R. Civ. P. 11(c)(4).

on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."[161] In this case, a monetary sanction (but not attorneys' fees and expenses) is available as a potential Rule 11 sanction—because the Court "issued the show-cause order [on its own initiative] before voluntary dismissal . . . of the claims made by or against the party . . . whose attorney[] [is] to be sanctioned."[162]

In addition to Rule 11, the Court is invested with "inherent authority" to "fashion an appropriate sanction for conduct which abuses the judicial process"[163] or for "willful disobedience of a court order."[164] Under this inherent authority, the Court can require the party abusing the judicial process or willfully disobeying a court order to reimburse the legal fees and costs incurred by the other side.[165] But the Court can only order the reimbursement of those fees and costs that the other side would not have accrued "but for" the misconduct of the bad actor.[166]

Before imposing a sanction for fees and costs for conduct that abuses the judicial process, the Court must first make a finding that the relevant party acted in bad faith.[167] A party acts in bad faith—for purposes of imposing a sanction pursuant to the Court's inherent authority—when it

---

[161] *Id.*

[162] Fed. R. Civ. P. 11(c)(5)(B); *see also Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) ("It is not permissible to award attorneys' fees under Rule 11 when the sanctions are imposed sua sponte, but an award of attorneys' fees is permissible under a court's inherent powers as long as the person being sanctioned has demonstrated bad faith." (citation omitted)).

[163] *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).

[164] *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998).

[165] *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017); *Greiner*, 152 F.3d at 790.

[166] *See Goodyear Tire & Rubber Co.*, 581 U.S. at 107–10. The Supreme Court has been clear that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

[167] *Stevenson*, 354 F.3d at 751.

either "practice[s] a fraud upon the [C]ourt or defile[s] 'the temple of justice.'"[168]  That finding is not necessary—or, perhaps stated more elegantly, is automatic—where the misconduct is willful disobedience of a court order.[169]

Ms. Work violated Rule 11(b)(2) and 11(b)(3).  Her signed court filings contained outright lies.  She represented to the Court that she conferred with opposing counsel before filing her Motion for Leave.[170]  She did not.[171]  She represented to the Court that she failed to timely file certain responsive summary judgment papers because of a misunderstanding of the governing rules.[172]  That was not the reason she filed untimely papers.[173]  Additionally, Ms. Work submitted to this Court multiple signed filings that advanced an interpretation of Rule 56 that was—to put it mildly—not warranted by existing law and not warranted by a non-frivolous argument for extending, modifying, or reversing existing law (or establishing new law).[174]  The Court can (and will) sanction this misconduct under Rule 11.

This same misconduct abused the judicial process, giving rise to the Court's ability to sanction it as an exercise of inherent power.  And this wasn't Ms. Work's only conduct sanctionable under the Court's inherent authority.  Ms. Work also intentionally ignored a Court Order.[175]  She purposefully filed a Motion for Leave without documents and information required by the Local

---

[168] *Id.* (quoting *Chambers*, 501 U.S. at 46).

[169] *See Chambers*, 501 U.S. at 45.

[170] *See* Mot. for Leave (Doc. 80) ¶ 14.

[171] *See* Mot. to Amend (Doc. 81) ¶¶ 1–4.

[172] Br. in Opp'n to Mot. to Strike (Doc. 67) at 2–4; Mot. for Leave (Doc. 80) ¶ 11; Br. in Resp. to Show Cause Order (Doc. 88) at 9–12.

[173] *See supra* pages 11–14.

[174] *See* Br. in Opp'n to Mot. to Strike (Doc. 67) at 2–4; Mot. for Leave (Doc. 80) ¶ 11.

[175] *See Chambers*, 501 U.S. at 45 ("[A] court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975))).

Rules and a prior Court Order.[176]  All this misconduct was committed in bad faith by Ms. Work: the lie about conferring with opposing counsel, the filing of the Motion for Leave in knowing derogation of clear Court directives, and the ridiculous interpretation of Rule 56.[177]

With respect to the Rule 11 violations, the Court must now ask what consequences suffice to deter repetition of the misconduct by Ms. Work or comparable conduct by others similarly situated.[178]  Because of Ms. Work's remorselessness and her lack of understanding of the gravity of the problem, the consequences must be significant enough to deter her from this type of conduct in the future.  In the Court's view, the following consequences are sufficient but no more than necessary to accomplish this goal.

1.    Ms. Work is ordered to pay to the Court $4,000.  This represents 10% of the total revenue Ms. Work has earned since becoming a lawyer.[179]  It also represents about 20% of the moneys that Plaintiffs paid Ms. Work for legal services relating to the incident at issue in this case.[180]  The Court believes that any lower financial penalty would be treated as a slap-on-the-wrist by Ms. Work, and a slap-on-the-wrist would be counterproductive here.  The aforementioned sum is immediately due to the Clerk of the United States District Court for the Eastern District of Arkansas.  If Ms. Work cannot pay the full $4,000 up front, she must pay $250 every month until the penalty is satisfied.  Interest is waived so long as Ms. Work pays at least $250 per month.

---

[176] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 11–13.

[177] With respect to bad faith, the Court is making both a finding of fact and conclusion of law.  It should be noted that the bad-faith finding is not necessary to support a fees-and-costs sanction for the portion of Ms. Work's misconduct that constitutes willful disobedience of a Court Order.  *See supra* pages 42–43.

[178] *See* Fed. R. Civ. P. 11(c)(4).

[179] *See* Mar. 18, 2025 Hr'g Tr. (Doc. 92) at 22.

[180] *See* Pls.' Notice to the Ct. (Doc. 93) at 14–20; Work Decl. accompanying Sealed Ex Parte Notice to the Ct. (Doc. 99) ¶ 11.

2.    Within one year of the date of this Order, Ms. Work is directed to take five (5) in-person credit hours of Ethics CLE and five (5) in-person credit hours of Federal Civil Procedure CLE.  All of the Ethics CLE credit hours must come from classes that cover a lawyer's duties to the court and to opposing counsel.  Three (3) of the Federal Civil Procedure CLE credit hours must come from classes that specifically discuss the Federal Rules of Civil Procedure.  Ms. Work must provide, within one year of the date of this Order, a signed declaration (and documentary support) showing the completion of these CLE requirements.  Her declaration must be at least seven (7) pages in length and must explain to the Court *in detail* what she has learned from each CLE class. The Court believes this sanction is necessary because (a) Ms. Work needs reinforced lessons on the importance of honesty and candor in our profession; and (b) Ms. Work appears to need better familiarity with the rules of federal court to avoid the problems that eventually snow-balled into lying and dishonesty in this case.

3.    Ms. Work is directed to provide today's Order to all of her current clients and, for the next 18 months, to any prospective clients.  Ms. Work needs to understand that her intentional misconduct has ongoing consequences for her standing in the legal community, and this is the best way to show her that.

4.    The Court will refer Ms. Work to the Arkansas Judiciary's Office of Professional Conduct.  It will be up to that Office to decide what to do with the referral.

With respect to the Court's inherent authority, the Court orders Ms. Work to pay Defendants' attorneys' fees and costs attributable to: (a) emailing Ms. Work concerning her lie about conferring with opposing counsel; (b) reviewing the Amended Motion for Leave that addressed this lie; (c) reviewing and responding to the Motion for Voluntary Dismissal; (d) reviewing the Court's Orders concerning the Motion to Strike, the Motion for Voluntary

Dismissal, and the requirement for Ms. Work to show cause; (e) reviewing Ms. Work's written response to the Show Cause Order; (f) preparing for and attending the show cause hearing, which included argument on the Motion for Voluntary Dismissal; and (g) reviewing any post-hearing submissions.[181]  These are the only fees and costs that would not have been incurred but for Ms. Work's willful misconduct.

This order to pay attorneys' fees and costs is subject to two conditions.  First, Ms. Work will not have to pay such fees and costs unless Defendants submit a motion (along with a brief and declaration) for such fees and costs.  Defendants are free to choose whether they want to pursue this relief or not.  Second, the Court is going to cap the fees and costs payable to Defendants at $3,500.  In light of the Rule 11 sanctions already imposed, requiring Ms. Work to pay more than $3,500 for fees and costs would be overkill and would not be an appropriate exercise of the Court's inherent authority.  A $3,500 cap strikes the right balance, all things considered.

IT IS SO ORDERED this 4th day of June 2025.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[181] Time for reviewing this Order and preparing a fee request will be excluded.